IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**WILLIAM MILLER,**

**Plaintiff,**

**v.** **No. CIV 05-577 BB/LAM**

**PAUL SPIERS, MICHAEL FOX, and DONNA ARBOGAST,**

**Defendants.**

# MEMORANDUM OPINION AND ORDER ON DEFENDANT SPIERS' MOTION TO DISMISS, IMMUNITY

**THIS MATTER is before the Court on the motion of Defendant Spiers for judgment on the pleadings based on absolute prosecutorial immunity and qualified immunity or in the alternative motion to dismiss based on subject matter jurisdiction [doc. #21]. The Court having considered the pleadings and briefs of counsel and being otherwise advised in the premises, finds the motion should be Granted in Part and Denied in Part.**

## *Discussion*

### *Background*

**Defendant Paul Spiers was employed as an Assistant District Attorney for the Bernalillo County District Attorney's office at the time in issue. *See* First Amended Complaint ("Amend. Comp.") ¶ 6. In that role Spiers was the lead prosecutor on a case resulting from the murder of Girly Hossencofft. Plaintiff asserts that Spiers "managed the administration, direction and investigation of the case" as well as its prosecution. (Amend. Comp. ¶ 6). Plaintiff alleges**

**Spiers along with the police Defendants, Michael Fox and Donna Arbogast, "acting in concert, deliberately and maliciously, without basis, probable cause or factual support, decided to bring charges against Miller. To convince a grand jury to indict Miller, Defendants fabricated a case against Miller to implicate him in, and have him indicted for the murder of Girly Hossencofft." (Amend. Comp. ¶ 9). Spiers moves to dismiss the allegations against him on the ground that his actions are protected by absolute, or alternatively qualified, immunity.**

***The Law of Prosecutorial Immunity***

**"Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence."** ***United States v. Henderson*****, 241 F.3d 638, 652 (9th Cir. 2000). The common law has therefore long recognized prosecutors must be given immunity from the chilling effects of civil liability.** ***Burns v. Reed*****, 500 U.S. 478, 485 (1991);** ***Griffith v. Slinkard*****, 44 N.E. 1001, 1002 (Ind. 1896). This can be provided in the form of either absolute or qualified immunity. The amount and type of immunity granted a prosecutor depends on what activity is challenged. "The Supreme Court's recent decisions leave no doubt that absolute immunity is appropriate when the challenged activity falls squarely within a prosecutor's advocacy function." Joseph Cook, John Sobreski, Jr., 1 CIVIL RIGHTS ACTIONS § 2.07[E] at 2-344 (2004). Prosecutors are absolutely immune from damages for their advocacy and activities "intimately associated with the judicial phase of the criminal process."** ***Imbler v. Pachtman*****, 424 U.S. 409, 430 (1976). Therefore, a prosecutor may rely on absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."** ***Buckley v. Fitzsimmons*****, 509 U.S. 259, 273 (1993). In**

**order to determine absolute immunity, then, each of Plaintiff's allegations must be tested against the role Spiers was playing when he performed the acts complained of. *Kalina v. Fletcher*, 522 U.S. 118 (1997).**

***<u>Manufacture of False Evidence</u>***

**The complaint alleges that Girly Hossencofft was murdered on or about September 9, 1999. (¶ 8) Spiers first asked the grand jury to consider Miller as a target in September 1999 but the grand jury refused to indict Miller. (¶ 28) A second grand jury met in February 2001 and indicted Miller for murder, kidnaping, conspiracy to commit kidnaping, and several charges of tampering with evidence. (¶ 33) In between the first and second grand juries the complaint alleges "Spiers having decided to fabricate evidence against Miller, instructed his investigative team to search the Miller residence for the fifth time." (¶ 15) When feathers from fishing flies were found "Spiers instructed Arbogast to search her collected trace evidence for feathers." (¶ 17) Spiers allegedly did this "knowing that the probative value of the feathers found in Miller's residence fifteen months after the murder and after four previous searches was nil." (¶ 18) The collection and evaluation of evidence is clearly a traditional prosecutorial function. *Buckley v. Fitzsimmons*, 509 U.S. at 259; *KRL v. Moore*, 384 F.3d 1105, 1112 (9th Cir. 2004).**

**Plaintiff goes on to detail how all the Defendants knew Mr. Hossencofft's carpet sweeper was in transit at the time of the murder but "[t]race evidence purportedly found in the carpet cleaner was included in the affidavit for arrest warrant against Miller and presented in the second and third grand juries." (¶ 19) Since Plaintiff makes no allegation Assistant District Attorney Spiers had any role in preparing the arrest affidavit, he is presumably being**

**charged with presenting false evidence to the grand jury. Absolute immunity protects virtually any and every aspect of presenting any type of evidence to a grand jury.[1]**

***<u>Withholding Exculpatory Evidence</u>***

**Plaintiff next alleges that Arbogast's testimony before the grand jury that human hair found on the tarp allegedly used to carry the body of Girly Hossencofft was Miller's. "Spiers was present during Arbogast's testimony and he had knowledge of the DNA results which specifically excluded Miller. Spiers did nothing to correct Arbogast's testimony." (¶ 25) Absolute immunity attaches to all aspects of the prosecutor's advocacy before a grand jury. *Burns v. Reed*, 500 U.S. at 478; *Imbler v. Pachtman*, 424 U.S. at 422-5.**

***<u>Conspiracy</u>***

**Plaintiff charges Spiers "made an administrative decision to manipulate and develop the evidence and redirect the investigation around Miller (Spiers' hand picked third party accomplice) to support his theory of the case." (¶ 12). While the allegation is not specific enough to fairly inform Defendant or the Court of the specifics marshaling and directing the organization of evidence, it appears to be protected by absolute immunity in spite of the "administrative" label. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *Brummett v. Camble*, 946 F.2d 1178, 1182 (5th Cir. 1991); *Young v. Biggers*, 938 F.2d 565 (5th Cir. 1991). Plaintiff next alleges Spiers "conspired to and did present false evidence to the grand juries." (¶ 13). This is clearly within the advocacy function and protected by absolute immunity. *Herb Hallman***

---

1 *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636 (9th Cir. 1999); *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994); *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989); *Morrison v. City of Baton Rogue*, 761 F.2d 242 (5th Cir. 1985) (per curiam); *Maglione v. Briggs*, 748 F.2d 116 (2d Cir. 1984) *Siano v. Justices of Massachusetts*, 698 F.2d 52 (1st Cir. 1983).

***Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d at 636; *Buckley v. Fitzsimmons*, 20 F.3d at 789; *Rose v. Bartle*, 871 F.2d at 331.**

***"Grand Jury Improprieties"***

**Plaintiff alleges "Spiers first targeted Miller as a suspect in the Girly Hossencofft murder during the September-October 1999 grand jury (the first grand jury). Spiers asked this grand jury to consider Miller as a target for indictment." (¶ 28) Such conduct is "intimately associated with the judicial phase of the criminal process"[2] and thus protected by absolute immunity. *Newcomb v. Ingle*, 944 F.2d 1534 (10th Cir. 1991); *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988); *Kohl v. Casson*, 5 F.3d 1141, 1147 (8th Cir. 1993). The complaint further alleges "Spiers maliciously refused to present exculpatory evidence ... [and] refused to allow witnesses to testify who could establish an alibi for Miller." (¶ 31) Once again, this activity is entitled to absolute immunity. *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003). Plaintiff's allegations that Spiers read the transcript of Miller's first grand jury testimony to the second grand jury "without the verifying support of the taped recording" (¶ 31) is also clearly within the advocacy function of a prosecutor presenting evidence and thus protected by absolute immunity.**

***Arrest Warrant***

**Plaintiff alleges "Defendants knew the contents of the arrest warrant and complaint were false and contained material omissions. However, in furtherance of their conspiracy, they proceeded to use if (sic) for the purpose of having Miller arrested and later indicted." (¶ 21) If Spiers had some unspecified role in this alleged scenario, it might not be covered by absolute**

---

[2] *Imbler v. Pachtman*, 424 U.S. at 430.

**or even qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. at 259 (no absolute immunity for fabrication of evidence to create probable cause). However, given the policy goals of immunity, Plaintiff will be required to specify what exactly activity each Defendant allegedly engaged in. *Dill v. City of Edmond*, 155 F.3d 1193 (10th Cir. 1998); *Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003); *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001).**

***Press Contact***

**The complaint maintains "Spiers went so far as to call the Albuquerque Journal on Saturday, February 27, 2001 and inform writer Bruce Daniels that investigators found DNA evidence linking Miller to Girly Hossencofft's apartment. No such evidence existed." (¶ 31) Contacts with the press are definitely not within the traditional advocacy function of a prosecutor and therefore not protected by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. at 276-8; *England v. Hendricks*, 880 F.2d 281 (10th Cir. 1989). Analysis of the qualified immunity doctrine will require a more detailed statement of the facts, but on this general allegation the motion to dismiss will be denied. *Compare Latimore v. Widseth*, 986 F.2d 292 (8th Cir. 1993), *with Aversa v. United States*, 99 F.3d 1200 (1st Cir. 1996).**

***Violation of Fifth, Sixth, and Fourteenth Amendments***

**Under this rubric Plaintiff alleges "Fox, with the knowledge and approval of Spiers, knowingly and with reckless disregard for the truth or Miller's constitutional rights, included false statements in his affidavit of arrest which formed the basis for the arrest warrant." (¶ 46) The complaint continues, "Fox, Arbogast and Spiers knew or should have known that when they manufactured the evidence needed to establish probable cause they were violating Miller's constitutional rights." (¶ 47) This allegation again needs to specify each Defendant's**

**role but it does not appear to be part of the advocacy role and Prosecutor Spiers would therefore not have the shield of absolute immunity on these claims. *Kalina v. Fletcher*, 522 U.S. at 118; *Buckley v. Fitzsimmons*, 509 U.S. at 274. Qualified immunity awaits more specifics.**

***Conclusion***

**For the above stated reasons, Assistant District Attorney Spiers is absolutely protected in all actions where he was acting as an advocate in an on-going criminal proceeding. However, before probable cause existed and in talking to the press, Spiers was not cloaked with absolute immunity. Since Plaintiff has moved to again amend his complaint, the Court will postpone further analysis of qualified immunity until the pleadings are conformed to the requirements of this opinion.**

**O R D E R**

**For the above stated reasons, Defendant Spiers' *Motion for Judgment on the Pleadings* [doc. #21] is Granted in Part. Plaintiff's *Motion for Leave to Amend First Amended Complaint* [doc. #35], as filed January 30, 2006, is Denied, and Plaintiff is directed to amend his complaint in conformance with this opinion.**

**SO ORDERED this 7th day of February, 2006.**

**BRUCE D. BLACK**
**United States District Judge**

**For Plaintiff:**

**David Plotsky, Albuquerque, NM**
**Alex Chisholm, Albuquerque, NM**

**For Defendant Spiers:**

**Jerry A. Walz, WALZ & ASSOCIATES, Cedar Crest, NM**

**For Police Defendants:**

**Luis Robles, ROBLES, RAEL & ANAYA, Albuquerque, NM**