# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**WILLIAM MILLER**,

        Plaintiff,

v.                                                                    No. CIV 05-0577 BB/LAM

**PAUL SPIERS, MICHAEL FOX, and
DONNA ARBOGAST**,

        Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER comes before the Court on Defendants Fox and Arbogast's (collectively "City Defendants") July 28, 2006 motion for partial summary judgment (Doc. No. 106) ("City Defendants' Motion for Partial Summary Judgment No. II"), and Defendant Spiers' August 3, 2006 motion for partial summary judgment (Doc. No. 111) ("Defendant Spiers' Motion for Partial Summary Judgment I").[1] Having reviewed the submissions of the parties and the relevant

_____

[1] City Defendants previously filed a January 17, 2006 motion for partial summary judgment (Doc. No. 33) ("City Defendants' Motion for Partial Summary Judgment No. I"). After the parties finished briefing the Motion for Partial Summary Judgment No. I, Plaintiff Miller filed a Second Amended Complaint, dated June 7, 2006 (Doc. No. 75), as ordered by the Court. *See* Order, dated June 7, 2006 (Doc. No. 74). City Defendants subsequently filed the current Motion for Partial Summary Judgment No. II, which puts forth substantially similar arguments to those raised in the Motion for Partial Summary Judgment No. I but is properly based on the Second Amended Complaint. Thus, City Defendants' Motion for Partial Summary Judgment No. II supercedes the Motion for Partial Judgment No. I and the Court need not formally address the arguments set forth therein. However, the Court notes that City Defendants have incorporated into the motion currently before the Court the arguments raised in their Motion for Partial Summary Judgment No. I and related Reply (Doc. No. 45 ) and Plaintiff Miller has likewise incorporated by reference the arguments raised in his Response to the Motion for Partial Summary Judgment No. I. (Doc. No. 38). The Court has considered these arguments and, where

law, the Court finds that City Defendants' motion should be GRANTED in part and DENIED in part, and Defendant Spiers' motion should be GRANTED.

### Standard for Reviewing a Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.  56(c).  In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving  party.  *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).  However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones."  *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

Summary judgment is inappropriate if disputes remain as to material facts.  *See James Barlow Family Ltd. P'ship v. David  M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*.  Further, "[A] jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question."  *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

_____

applicable, addresses them in this Memorandum Opinion.

**Undisputed Facts**

On or about September 9, 1999, an Albuquerque woman named Girly Hossencofft ("Girly") was murdered.  Although Girly's remains have never been located, Girly's husband, Diazien Hossencofft ("Diazien"), and his girlfriend, Linda Henning ("Linda"), were convicted for her murder.[2]  *See* City Defs.' Mot. S.J. III, Ex. A, ¶ 6 (Doc. No. 109).  As early as September 1999, Defendant Paul Spiers ("Spiers"), an Assistant District Attorney for the County of Bernalillo, targeted Plaintiff Bill Miller ("Plaintiff") as a third suspect in Girly's murder.  *See* First Am. Cmpl., ¶ 8.  Defendant Michael Fox ("Fox"), an Albuquerque Police Department ("APD") Detective, was the case agent for the investigation into Girly's murder and Defendant Donna Arbogast ("Arbogast") was employed by the APD as a forensic scientist who collected, analyzed, and tested trace evidence in the investigation.  *See* City Defs.' Mot. S.J. IV, Ex. A, ¶ 4. On December 13, 2000, Defendant Fox prepared an affidavit in support of a search warrant for Plaintiff's residence, which sought "[a]ny and all materials used in fishing, hunting, gaming, or tying flies for fishing to include but not be limited to deer hair and Mylar," as well as "[a]ny and all trace evidence."  *See* Def. Spiers' Mot. S.J. II, Ex. 3, pg. 3 (Doc. No. 114).  During the search warrant execution, which occurred on December 20, 2000,[3] Defendant Fox told Plaintiff that he

---

[2]  Diazien pled guilty to murder, conspiracy to commit murder, kidnapping, conspiracy to commit kidnapping, and tampering with evidence, while Linda was ultimately convicted of murder in the first degree, kidnapping, conspiracy to commit kidnapping, three counts of perjury, criminal solicitation, and three counts of tampering with evidence.  *See* Second Am. Cmpl., ¶ 8.

[3]  There is a slight discrepancy regarding the date of the search warrant execution.  In their Motion for Partial Summary Judgment II, City Defendants state that the search was executed on December 20, 2000, and Plaintiff does not dispute this date.  *See* City Defs.' Mot. S.J. II, ¶ 3; Pl.'s Resp. to City Defs.' Mot. S.J. II (Doc. No. 126).  However, Plaintiff's arrest warrant indicates that the search took place on December 14, 2000.  *See* City Defs.' Mot. S.J. II, Ex. B, pg. 10.  Ultimately, this discrepancy is immaterial and the Court will adopt December 20, 2000, as

(Defendant Fox) "was going to nail [Plaintiff's] ass to the wall."  *See* Cmpl., ¶¶ 16-17 (Doc. No.1).  The APD investigators conducting the search collected deer, rabbit, and cat hair as well as feathers, all of which are used for tying flies for fishing.  *See* City Defs.' Mot. S.J. II, Ex. B, pg. 10.

About two months later, on February 12, 2001, Defendant Fox prepared an affidavit in support of an arrest warrant for Plaintiff.  *See* City Defs.' Mot. S.J. II, Ex. B.  Among other things, the arrest warrant linked the trace evidence collected at Plaintiff's residence on December 20, 2000, to Girly's murder.[4]  *See* City Defs.' Mot. S.J. II, Ex. B, pg. 10.

Later on February 12, 2001, the same day Defendant Fox prepared the arrest warrant, APD officers arrested Plaintiff at a grocery store.  *See* Cmpl., ¶ 26.  After he was arrested, Plaintiff was taken to the APD Northeast substation.  While in custody, Plaintiff hid business cards in his sock.  *See* City Defs.' Mot. S.J. IV, Ex. D, p. 195, l. 24-p.196, l.3; p. 199, l. 24-p. 201, l. 19; p.323, ll. 8-25 (Doc. 110).  Plaintiff also attempted to eat two business cards, and in the process split one of the business cards into two separate pieces.  *See* Spiers' Mot. S.J. I, Ex. B, p.252, l. 9-p.253, l.13 (Doc. 111).

Beginning on February 12, 2001, immediately after he was arrested, Plaintiff was held in confinement at the Bernalillo County Detention Center for seven weeks.  *See* Cmpl., ¶¶ 26, 33,

_____

the date of the search execution.

[4] Specifically, the affidavit in support of the search warrant stated that deer hair, rabbit hair, cat hair, and feathers were collected from the living room carpet of Girly's apartment; rabbit hair, cat hair, and feathers were collected from a tarp connected to Girly's murder that was recovered from Highway 60; cat hairs were collected from a bloody blouse connected to Girly's murder recovered from Highway 60; and deer hairs were collected from the steam cleaner the police alleged was used to clean Girly's apartment.  *See* City Defs.' Mot. S.J. II, Ex. B, pg. 10.

34.  Shortly thereafter, between February 21-23, 2001, the State of New Mexico presented

evidence against Plaintiff to a Grand Jury (the "Second Grand Jury").[5]  Defendants Fox and

Arbogast each testified falsely to the Second Grand Jury about the evidence linking Plaintiff to

Girly's murder.[6]

On February 23, 2001, the Second Grand Jury returned an indictment against Plaintiff for

conspiracy to commit murder, kidnapping, and conspiracy to commit kidnapping.  *See* City Defs.'

Mot. S.J. II, Ex. C., responses to RFA No. 16.   The Second Grand Jury also returned five

charges of tampering with evidence against Plaintiff.  *Id*.  One charge related to a burned business

card, one charge related to a notebook found at the grocery store where Plaintiff was arrested,

---

[5]  At or around the time indictments were returned against Diazien and Linda, an initial grand jury declined to return any charges against Plaintiff.  *See* City Defs.' Mot. S.J. II, Ex. D-5, pg.1.

[6]  Both Defendants Fox and Arbogast failed to testify that the trace evidence found in the steam cleaner, which allegedly linked Plaintiff to Girly's apartment, was compromised because there was a break in the chain of custody.  *See* First Am. Cmpl., ¶¶ 9-33; Second Am. Cmpl., ¶¶ 22-89; City Defs.' Mot. S.J.  II, Ex. C, responses to RFA Nos. 6-15.
Additionally, Defendant Fox failed to testify that the carpet cleaner from which this trace evidence was collected, was not located in Albuquerque on September 9, 1999, the day Girly disappeared.  *See* First Am. Cmpl., ¶¶ 9-33; Second Am. Cmpl., ¶¶ 22-89; City Defs.' Mot. S.J. II, Ex. C, responses to RFA Nos. 6-15.  Fox testified falsely regarding other aspects of the case against Plaintiff including the evidence whether Linda's burned business card was found in Plaintiff's fireplace during a 1999 search; exculpatory information provided by Diazien's and Linda's respective cell-mates; messages on Girly's answering machine; Plaintiff's purchase of a firearm for Diazien; and the existence of a cat at a ranch outside of Magdalena (near where the tarp and blouse were recovered).  *Id*.
Finally, Defendant Arbogast failed to testify that there was no credible scientific evidence which linked the trace evidence found in the steam cleaner with Plaintiff.  *See* First Am. Cmpl., ¶¶ 9-33; Second Am. Cmpl., ¶¶ 22-89; City Defs.' Mot. S.J.  II, Ex. C, responses to RFA Nos. 6-15.  Moreover, Arbogast testified that the human hair found on the tarp recovered off Highway 60 was consistent with the standard for Plaintiff.  *Id*.  However, Defendant Arbogast failed to testify about the results of mitochondrial DNA testing of the hair found on the tarp which specifically excluded  Plaintiff "as the contributor of hair samples" but did not exclude Linda.  *Id.*

and three charges related to Plaintiff's attempt to eat the business cards immediately after he was arrested.  *See* Spiers' Mot. S.J. I, Ex. B, p.252, l. 9-p.253, l.13 (Doc. 111).

More than a year later, between May 21-23, 2002, the State of New Mexico presented evidence against Plaintiff to another Grand Jury (the "Third Grand Jury.")  Again, both Defendants Fox and Arbogast testified.  Defendant Fox falsely testified about the individual from whom Miller purchased a handgun.  *See* Second Am. Cmpl., ¶ 55.  Plaintiff does not allege that Defendant Arbogast testified falsely or otherwise violated his constitutional rights during her grand jury testimony on this occasion.  *See* Second Am. Cmpl., ¶¶ 1-118.

On May 24, 2002, the Third Grand Jury returned an indictment for the same counts of tampering with evidence as did the Second Grand Jury but not for kidnapping, conspiracy, or murder.  *See* Second Am. Cmpl., ¶ 92.  Thus, in May 2002, two indictments were pending against Plaintiff.  On May 24, 2002, Defendant Spiers filed a nolle prosequi on the Second Grand Jury indictment for conspiracy to commit murder, kidnapping, and conspiracy to commit kidnapping, but not for the tampering with evidence charges.  *See* Second Am. Cmpl., ¶¶ 93-94.

On July 13, 2003, Plaintiff entered into a Plea and Disposition Agreement with the State of New Mexico in which Plaintiff pled no contest to three counts of attempted tampering with evidence.  *See* City Defs.' Mot. S.J. II, Ex. E.  The two remaining tampering with evidence charges, relating to Henning's burned business card and Plaintiff's notebook, were dismissed with prejudice "[i]n consideration of [Plaintiff's] plea of No Contest to," the three charges of attempted tampering with evidence.  *Id*.  On October 8, 2003, a Judgment, Sentence, and Order Suspending Sentence was entered against Plaintiff.  According to this Judgment, Plaintiff was "convicted" of three counts of Attempted Tampering with Evidence pursuant to his no contest

6

plea (the "Attempted Tampering with Evidence Convictions").  *See* City Defs.' Mot. S.J. II, Ex. F.  Plaintiff then received a suspended sentence.

### **Plaintiff's Claims**

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983 (2007).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Thus, the first step in a § 1983 claim is to identify the specific constitutional rights allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.  In this regard, the Court reads Plaintiff's Second Amended Complaint to allege violations of his Fourth Amendment right to be free from unreasonable searches and seizures, *Taylor v. Meacham*, 82 F.3d 1556, 1560-61 (10th Cir. 1996), and his Fourteenth Amendment right not to be deprived of liberty without due process of law, or more specifically, as the result of the fabrication of evidence by a government officer acting in an investigative capacity. *Anthony v. Baker*, 767 F.2d 657, 662-63 (10th Cir. 1985); *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001).

In particular, the Second Amended Complaint states the following § 1983 claims:  Fourth Amendment and related civil conspiracy claims based on the December 13, 2000 search warrant and subsequent search; Fourth Amendment and related civil conspiracy claims based on the February 12, 2001 arrest warrant and subsequent arrest and detention without legal process; Fourteenth Amendment and related civil conspiracy claims based on City Defendants' testimony to the Second Grand Jury; Fourteenth Amendment and related civil conspiracy claims based on

Defendant Fox's testimony to the Third Grand Jury; and Fourth Amendment and related civil conspiracy claims based on the February 12, 2003 search warrant and subsequent search.[7]

It is important to note two causes of action that are not asserted in the Second Amended Complaint. First, although it was discussed by the parties at the May 9, 2006 hearing, the Second Amended Complaint does not assert a cause of action for defamation nor set forth any allegations from which such a cause of action could be inferred. *See* Second Am. Complaint, ¶¶, 1-118.

Second, the Second Amended Complaint does not assert a cause of action for malicious abuse of process.[8] Although this potential cause of action was discussed at the May 9, 2006 hearing before the Court, it was not specifically alleged in Plaintiff's First Amended Complaint. Indeed, the First Amended Complaint suffered from a general lack of specificity and the Court ordered Plaintiff to file a Second Amended Complaint specifically enunciating its allegations and causes of actions. *See* Order, dated June 7, 2006 (Doc. No. 74); Clerk's Minutes, dated May 9, 2006 (Doc. No. 65). Given this history, it is significant that the Second Amended Complaint does not explicitly set forth a claim for malicious abuse of process. *See* Second Am. Cmpl., ¶¶ 1-118. Further, the Court finds that, read in the light most favorable to Plaintiff, the allegations advanced in the Second Amended Complaint do not give rise to such a claim. To state a § 1983 claim for malicious abuse of process, a plaintiff must demonstrate that: 1) he has satisfied the requirements

---

[7] This final claim is not discussed in this Memorandum Opinion. Instead it is addressed in the Memorandum Opinion resolving City Defendants' August 3, 2006 Motion for Partial Summary Judgment No. III and Defendant Spiers' August 3, 2006 Motion for Partial Summary Judgment No. II issued concurrently with this one.

[8] In *DeVaney v. Thriftway Marketing Corp.*, the New Mexico Supreme Court combined the torts of abuse of process and malicious prosecution into a single cause of action: malicious abuse of process. 953 P.2d 273, 283 (N.M. 1997), *cert. denied*, 524 U.S. 915 (1998).

of a state law cause of action for malicious abuse of process; 2) the malicious abuse of process was committed by state actors; and 3) he was deprived of liberty. *Smart v. Board of Tr. of Univ. of Illinois*, 34 F.3d 432, 434 (7th Cir. 1994) *cert. denied*, 114 S. Ct. 941 (1995); *see also Taylor*, 82 F.3d at 1561 (stating that the common law elements of malicious prosecution are the "starting point" for the analysis of § 1983 malicious prosecution claims).

Thus, a determination of whether a § 1983 claim for malicious abuse of process can be inferred from the Second Amended Complaint begins with New Mexico tort law. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). In *DeVaney v. Thriftway Marketing Corp.*, the New Mexico Supreme Court defined the tort of malicious abuse of process as:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a *primary* motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. (emphasis added).

953 P.2d 277, 283 (N.M. Sup. Ct. 1997), *cert. denied*, 524 U.S. 915 (1998). Although the first, second, and fourth elements of this cause of action can be inferred from the allegations in the Second Amended Complaint, the third cannot.

The third element cannot be inferred because the prosecution was ultimately shown to be supported by probable cause since Plaintiff was convicted for attempted tampering with evidence. *See Devaney*, 953 P.2d at 286 ("an unfavorable termination for the malicious-abuse-of-process plaintiff, meaning some form of recovery for the original-proceeding plaintiff, is conclusive evidence of the existence of probable cause.") (internal quotations omitted). Thus, the fact that Plaintiff was convicted forecloses a finding that the *primary* motive for initiating the prosecution

was, as Plaintiff alleges, "to make [Plaintiff] as anxious as he could be about his circumstances," as opposed to Defendants' reasonable belief that Plaintiff had committed a crime. *See* Second Am. Cmpl., ¶ 20.

In sum, Plaintiff elected not to assert a claim for malicious abuse of process and the allegations in the Second Amended Complaint do not give rise to such a claim because the prosecution was necessarily supported by probable cause since it resulted in Plaintiff's conviction. *See Bordeaux v. Lynch*, 958 F. Supp. 77, 84 (N.D.N.Y. 1997); *Winslow v. Romer*, 759 F. Supp. 670, 675 (D. Colo. 1991). Thus, the Second Amended Complaint does not state a § 1983 claim for malicious abuse of process.

## I.    The Statute of Limitations

The parties do not dispute the applicability of New Mexico's three-year limitations period for this civil rights action. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that § 1983 actions are best characterized as personal injury actions and subject to New Mexico's three-year limitation); N.M. Stat. Ann. § 37-1-8 (1978). The parties' disagreement concerns when Plaintiff's discrete § 1983 claims accrued.

### A.    *Wallace v. Kato*

After the parties finished briefing of the current motions, the United States Supreme Court decided *Wallace v. Kato*, 2007 U.S. Lexis 2650 (2007).[9] The *Wallace* decision controls the statute of limitations analysis in this case and simplifies a previously confusing area of § 1983 law:

---

[9] Although the parties did not submit briefs following the *Wallace* decision, they did address it at the February 26, 2007 hearing.

the accrual date of § 1983 claims under *Heck v. Humphrey*, 512 U.S. 477 (1994).[10]  It is therefore

useful to review the *Wallace* decision in some detail.

  In *Wallace*, the Court considered whether the petitioner's  § 1983 claim asserting a Fourth

Amendment claim based on an allegedly false arrest was barred by the statute of limitations

because it was filed more than two years (the applicable statue of limitations in Illinois) after the

allegedly false arrest.  In short, the Supreme Court held that the following "standard rule" applies

to § 1983 claims:  "[accrual occurs] when the plaintiff has a complete and present cause of

action.'"  *Wallace*, 2007 U.S. Lexis at **8-9 (citing *Bay Area Laundry and Dry Cleaning*

*Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  However, the *Wallace*

Court noted that a false arrest claim is "subject to a distinctive rule - dictated, perhaps, by the

reality that the victim may not be able to sue while he is still imprisoned:  'Limitations begin to run

against an action for false imprisonment when the alleged false imprisonment ends.'"  *Wallace*,

2007 U.S. Lexis at **11.  Thus, the *Wallace* Court concluded, "The statute of limitations on

---

  [10]  In *Heck v. Humphrey*, the Supreme Court put forth the law governing § 1983 claims
that attack the validity of arrests or prosecutions.  The Court explained:

> We hold that, in order to recover damages for allegedly unlawful
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such a
> determination, or called into question by a federal court's issuance
> of a writ of habeas corpus.  A claim for damages bearing that
> relationship to a conviction or sentence that has *not* been so
> invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citations omitted) (emphasis in original).

petitioner's § 1983 [Fourth Amendment false arrest] claim commenced to run when he appeared

before the examining magistrate and was bound over for trial."  *Id*. at **14-15.

The Supreme Court then considered the argument that, under *Heck*, petitioner's § 1983

claim did not accrue until the State dropped its charges against him.  Forcefully rejecting this

argument and making clear that a § 1983 claim accrues "when the plaintiff has a complete and

present cause of action," the Court stated:

> What petitioner seeks, in other words, is the adoption of a principle
> that goes well beyond *Heck*:  that an action which would impugn an
> anticipated future conviction cannot be brought until that
> conviction occurs and is set aside.  The impracticality of such a rule
> should be obvious.  In an action for false arrest, it would require the
> plaintiff (and if he brings suit promptly, the court) to speculate
> about whether a prosecution will be brought, whether it will result
> in conviction, and whether the pending civil action will impugn that
> verdict . . . all this at a time when it can hardly be known what
> evidence the prosecution has in its evidence.

*Wallace*, 2007 U.S. Lexis at **17-18.

Finally, the *Wallace* Court addressed the issue of tolling.  In particular, given that § 1983

claims often times accrue before the existence of a criminal conviction that might trigger the *Heck*

bar, it considered whether the statute of limitations for a (previously valid) § 1983 claim should be

tolled when a criminal conviction is obtained.  Afer noting that there was no Illinois case

providing for tolling in a similar situation, the Supreme Court declined to adopt such a tolling

rule.  *Wallace*, 2007 U.S. Lexis at **19-20.  Thus, the statute of limitations for a § 1983 claim is

not tolled when a conviction is obtained, even if such conviction might trigger the *Heck* bar.

In sum, after *Wallace*, § 1983 claims are deemed to have accrued "when the plaintiff has a

complete and present cause of action."  Further, the possibility of a future conviction stemming

from pending charges is immaterial to a determination of the date of accrual.  And, finally, the

statute of limitations for a § 1983 claim will not be tolled in the event a criminal conviction is

obtained during the limitations period.

>    **1.    Plaintiff's Fourth Amendment claim based on the December 20, 2000 search is barred by the statute of limitations**

In the Tenth Circuit, "[c]laims arising out of police action toward a criminal suspect, such

as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions

actually occur." *Beck*, 195 F.3d at 558 (citing *Johnson v. Johnson County Comm'n Bd.*, 925

F.2d 1299, 1301 (10th Cir. 1991).  Therefore, with respect to Plaintiff's first claim alleging an

unlawful search, he had a "complete and present cause of action" on the December 20, 2000 - the

date his residence was searched pursuant to the December 13, 2000 search warrant.  Given this

accrual date, the statute of limitations for Plaintiff's § 1983 Fourth Amendment claim expired on

December 20, 2003.  Since Plaintiff did not file this action until May 24, 2005 - more than sixteen

months later - this claim is barred by the statute of limitations.

>    **2.    Plaintiff's Fourth Amendment claim based on the February 12, 2001 arrest is barred by the statute of limitations**

As made clear in *Wallace*, Plaintiff's § 1983 Fourth Amendment claim based on his

allegedly false arrest accrued on the date legal process was initiated against him.  2007 U.S. Lexis

at **11.  The latest possible date this occurred was February 23, 2001 - the date the Second

Grand Jury returned an indictment against Plaintiff for conspiracy to commit murder, kidnapping,

conspiracy to commit kidnapping, and five charges of tampering with evidence against Plaintiff.

Thus, under *Wallace*, Plaintiff had a "complete and present cause of action" on February 23,

2001, and the statute of limitations for this § 1983 Fourth Amendment claim expired three years

later on February 23, 2004.  Again, since Plaintiff did not file this action until May 24, 2005, this

Fourth Amendment claim based on the allegedly illegal arrest is barred by the statute of

limitations.

> **3.** **Plaintiff's Fourteenth Amendment claim based on City Defendants February 21-23, 2001 Testimony to the Second Grand Jury is barred by the statute of limitations**

In applying *Wallace* to Plaintiff's Fourteenth Amendment claim based on City Defendants

false testimony to the Second Grand Jury, it is useful to review the standard starting point for

determining § 1983 accrual dates in the Tenth Circuit.  In particular, a "[s]ection 1983 action

accrues, for purposes of the statute of limitation, 'when [a plaintiff] [knew] or [had] reason to

know of the injury which is the basis of his action.'"  *Johnson v. Johnson County Com'n Bd.*, 925

F.2d 1229, 1301 (10th Cir. 1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d

Cir. 1980), *cert. denied*, 450 U.S. 920 (1981).  A plaintiff has reason to know of his injuries so as

to start the limitations period when he should have discovered it through the actual exercise of

reasonable diligence.  *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th

Cir.), *cert. denied*, 454 U.S. 895 (1981).  Further, "[i]t is not necessary that a claimant know all

of the evidence ultimately relied on for the cause of action to accrue."  *Baker v. Bd. of Regents*,

991 F.2d 628, 632 (10th Cir. 1993).  With respect to a claim based on alleged misconduct before

a grand jury, the statute of limitations commences on the date the indictment is returned (*i.e.*, the

date the § 1983 plaintiff becomes aware he has been injured).  *Covington v. City of New York*,

2000 U.S. Dist. LEXIS 747, *8 (S.D.N.Y. 2000) ("[Plaintiff's] claims of conspiracy and

misconduct before the grand jury accrued on the date the final indictment against him was filed . .

.").  Therefore, Plaintiff had a "complete and present cause of action" on February 23, 2001, the

date the Second Grand Jury returned an indictment against Plaintiff for conspiracy to commit

murder, kidnapping, conspiracy to commit kidnapping, and five charges of tampering with

evidence.  Consequently, the statute of limitations for this § 1983 Fourteenth Amendment claim

expired three years later on February 23, 2004.  Thus, as with the two previous claims, Plaintiff's

claim based on alleged misconduct before the Second Grand Jury is barred by the statute of

limitations.[11]

          **4.**       **Plaintiff's Fourteenth Amendment claim based on City Defendants May 21-23, 2002 Testimony to the Third Grand Jury is not barred by the statute of limitations**

---

[11]  Plaintiff's claim would be time barred even if the Court were to adopt the most favorable accrual date proposed by Plaintiff.  Specifically, Plaintiff contends that the statute of limitations should not be deemed to have accrued until he was able to review the transcripts from the Second Grand Jury.  In considering this argument, it is important to note that the knowledge of one's lawyer is imputed to the client.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 ("each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'")  Accordingly, an attorney's knowledge of an injury may work to bar his client's claims under a statute of limitations.  *See Veal v. Gerraci*, 23 F.3d 722, 725 (2d Cir. 1994) (holding that plaintiff's § 1983 claim was time-barred because his attorney knew of plaintiff's injury outside the three-year statute of limitations period).

It follows that there are three relevant dates concerning Plaintiff's review of the Second Grand Jury transcripts.  First, On April 3, 2001, a little more than a month after Plaintiff was indicted, Plaintiff's criminal attorney notified Defendant Spiers that he had "been reviewing the transcript for the [February 2001] grand jury which indicted [Plaintiff]."  *See* City Defs.' Mot. S.J. II, Ex. D, ¶ 10, Ex. 2.  Second, on December 11, 2001, these transcripts were formally produced to Plaintiff's criminal attorney.  *See* City Defs.' Mot. S.J.  II, Ex. D, ¶ 10, Ex. 4.  Finally, on May 13, 2002, Plaintiff's criminal attorney sent a seventeen page latter to Defendant Spiers *and Plaintiff* in which he alleged that Defendants had fabricated inculpatory evidence and intentionally disregarded exculpatory evidence during the presentation to the Second Grand Jury.  *See* City Defs.' Mot. S.J.  II, Ex. D, ¶ 10, Ex. 5.  Importantly, this letter cites the grand jury transcripts to support its objections to the investigation and prosecution of Plaintiff.  *Id*.  Thus, even if this Court adopted May 13, 2002, as the date Plaintiff became actually (as opposed to constructively) aware of City Defendants' false testimony to the Second Grand Jury, Plaintiff's Fourteenth Amendment claim would still be time-barred since the statute of limitations would have expired on May 13, 2005 - approximately two weeks before Plaintiff filed this action.

Under *Wallace*, the statute of limitations begins to run "when the plaintiff has a complete and present cause of action."  With respect to a claim based on alleged misconduct before a grand jury, the statute of limitations commences on the date the indictment is returned.  *Covington*, 2000 U.S. Dist. LEXIS at * 8.  Thus, Plaintiff had a "complete and present cause of action" on May 24, 2002, the date the Third Grand Jury returned an indictment against Plaintiff for five charges of tampering with evidence.  This cause of action is not barred by the three-year statute of limitations since Plaintiff filed this action on the last day of the limitations period - May 24, 2005. *See United States v. Hurst*, 322 F.3d 1256, 1259-60 (10th Cir. 2003) ("when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act.").

> **B.**     **The continuing violation doctrine is not applicable because Plaintiff did not allege a malicious abuse of prosecution conspiracy**

Plaintiff contends that, pursuant to *Robinson v. Maruffi,* 895 F.2d 649 (10th Cir. 1990), Defendants' actions should be viewed as a continuing violation of Plaintiff's constitutional rights. Under this theory, Plaintiff's claims would not (only) be viewed as discrete injuries that accrued on the dates they were incurred.  Instead, this theory posits that the discrete claims alleged in the Second Amended Complaint were part of an overarching conspiracy to deprive Plaintiff of his Constitutional rights and, therefore, the statute of limitations did not begin to run until the final overt act of the conspiracy had been completed.  In this case, that date would be February 12, 2003, the last time Defendants search Plaintiff's residence.

This theory, however, is not applicable to this case.  In *Robinson*, the Tenth Circuit predicated its finding of a continuing violation on the plaintiff's successful argument that the

defendants' wrongful acts were part of a larger malicious prosecution conspiracy "tied together by a plan to 'get' [the plaintiff] at all costs."  895 F.2d at 654.  Thus, the Tenth Circuit held, "We are mindful that discrete claims . . . despite their being averred as a continuing wrong, have been held barred where outside the time bar . . . We are persuaded, however, that all such claims here were essentially part of the malicious prosecution conspiracy."  *Id*. at 655.  In this case, however, as explained in the "Plaintiff's Claims" Section, *supra*, the Second Amended Complaint does not assert a malicious abuse of process conspiracy cause of action.   Thus, the discrete claims cannot be viewed as a continuing violation and the Court's findings regarding the respective accrual dates for the respective claims stand.

## Conclusion

Based on the foregoing, City Defendants' motion for partial summary judgment should be GRANTED in part and DENIED in part, and Defendant Spiers' motion for partial summary judgment should be GRANTED.

DATED April 13, 2007.

_____
UNITED STATES DISTRICT JUDGE
BRUCE D. BLACK

**Attorneys:**

**For Plaintiffs**
Alex Chisholm

**For Defendant**
Luis Robles