## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**WILLIAM MILLER**,

        Plaintiff,

v.                                   No. CIV 05-0577 BB/LAM

**PAUL SPIERS, MICHAEL FOX, and**
**DONNA ARBOGAST**,

        Defendants.

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants Fox and Arbogast's (collectively "City Defendants") August 3, 2006 motion for partial summary judgment (Doc. No. 109) ("City Defendants' Motion for Partial Summary Judgment No. III"), and Defendant Spiers' August 3, 2006 motion for summary judgment and for absolute and qualified immunity (Doc. No. 113) ("Defendant Spiers' Motion for Partial Summary Judgment II").[1]  Having reviewed the submissions of the parties and the relevant law, the Court finds that City Defendants' motion should be GRANTED, and Defendant Spiers' motion should be GRANTED in part and DENIED in part.

_____

[1]  Defendant Spiers previously filed a July 10, 2006 motion to dismiss Plaintiff's Second Amended Complaint and for absolute immunity (Doc. No. 84), which set forth substantially similar arguments to those advanced in Defendant Spiers' current Motion for Partial Summary Judgment II.  The Court has considered these arguments, as well as those contained in Plaintiff Miller's related July 25, 2006 Response (Doc. No. 98) and Defendant Spiers' Reply (Doc. No. 107), and, where applicable, addresses them in this Memorandum Opinion.

## Standard for Reviewing a Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.  56(c).  In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving  party.  *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).  However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones."  *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

Summary judgment is inappropriate if disputes remain as to material facts.  *See James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).  An issue of fact is "material" if it is essential to the proper disposition of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.*  Further, "[A] jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question."  *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

## Undisputed Facts

On or about September 9, 1999, an Albuquerque woman named Girly Hossencofft ("Girly") was murdered.  Although Girly's remains have never been located, Girly's husband, Diazien Hossencofft ("Diazien"), and his girlfriend, Linda Henning ("Linda"), were convicted for

her murder.  *See* City Defs.' Mot. S.J. III, Ex. A, ¶ 6 (Doc. No. 109).  As early as September

1999, Defendant Paul Spiers ("Spiers"), an Assistant District Attorney for the County of

Bernalillo, targeted Plaintiff Bill Miller ("Plaintiff") as a third suspect in Girly's murder.  *See* First

Am. Cmpl., ¶ 8.  Defendant Michel Fox ("Fox"), an Albuquerque Police Department ("APD")

Detective, was the case agent for the investigation into Girly's murder and Defendant Donna

Arbogast ("Arbogast") was employed by the APD as a forensic scientist who collected, analyzed,

and tested trace evidence in the investigation.  *See* City Defs.' Mot. S.J. IV, Ex. A, ¶ 4.

On February 12, 2003, Defendant Fox prepared an affidavit in support of a search warrant

for Plaintiff's residence (the "Search Warrant Affidavit").[2]  *See* City Defs.' Mot. S.J. III, Ex. A, ¶¶

7-8; Def. Spiers' Mot. S.J. II, Ex. 5, pg. 15.  In the fifteen (single-spaced) page Search Warrant

Affidavit, Defendant Fox requested a warrant to search Plaintiff's premises for "[a]ny and all

tapes containing conversations between [Plaintiff] and his psychic, Cynthia Hess."  Def. Spiers'

Mot. S.J. II, Ex. 5, pg. 1.  Before the Search Warrant Affidavit was presented to a magistrate,

Defendant Spiers reviewed and approved the affidavit.  *See* Def. Spiers' Mot. S.J. II, Ex. 5, pg.

15.  In fact, the Search Warrant Affidavit contains the following handwritten notation:

"Approved via telephone by Assistant District Attorney Paul Spiers on February 12, 2003 at

approximately 1430 hours."  *Id.*

Defendant Arbogast did not assist in drafting the search warrant affidavit nor did she take

part in the decision to seek the February 12, 2003 search warrant.  *See* City Defs.' Mot. S.J. III,

_____

[2]  The Court will not detail the extensive factual history leading up to the February 12,
2003 search warrant.  Instead, familiarity with these facts is assumed.  The Court directs readers
not familiar with this background to the Memorandum and Opinion Order resolving City
Defendants' July 28, 2006 Motion for Partial Summary Judgment No. II and Defendant Spiers'
Motion for Partial Summary Judgment I issued concurrently with this Memorandum Opinion.

Ex. B, ¶ 7.  Further, there is no evidence that Defendant Arbogast knowingly or recklessly gave

any false inculpatory information to Defendant Fox which he used in the affidavit.[3]  *See* City

Defs.' Mot. S.J. III, Fact No. 31.  Likewise, there is no evidence that Defendant Arbogast

knowingly or recklessly failed to provide exculpatory information to Defendant Fox which was

then omitted from the affidavit.[4]  *See* City Defs.' Mot. S.J. III, Fact No. 32.

### **Plaintiff's Claims**

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws" by any person acting under color of state law.

42 U.S.C. § 1983 (2007).  Section 1983 "is not itself a source of substantive rights," but merely

provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443

U.S. 137, 144 n.3 (1979).  Thus, the first step in a § 1983 claim is to identify the specific

---

[3]  Plaintiff contends that this fact is disputed and refers the Court to the "allegations denied by City Defendants in [the Second Amended Complaint]."  Pl.'s Resp. to City Defs.' Mot. S.J. III, pg. 14 (Doc. No. 127).  In their Answer, however, City Defendants denied all allegations that Defendant Arbogast, knowingly or with reckless disregard for the truth, gave false inculpatory information to Defendant Fox.  *See* City Defs.' Answer (Doc. No. 115).  Therefore, this pleading does not establish a disputed issue of fact.  Further, aside from this reference, Plaintiff does not specifically controvert City Defendants' Fact No. 31 with references to the record as required by Fed. R. Civ. P. 56(3) and D.N.M.L.R.-Civ. 56.1(b).  Therefore the Court finds that this fact is undisputed.

[4]  Again, Plaintiff contends that this fact is disputed and refers the Court to the "allegations denied by City Defendants in [the Second Amended Complaint]."  Pl.'s Resp. to City Defs.' Mot. S.J. III, pg. 14.  In their Answer, however, City Defendants denied all allegations that Defendant Arbogast, knowingly or with reckless disregard for the truth, failed to provide exculpatory information to Defendant Fox.  *See* City Defs.' Answer.  Therefore, this pleading does not establish a disputed issue of fact.  And again, aside from this reference, Plaintiff does not specifically controvert Fact No. 32 with references to the record as required by Fed. R. Civ. P. 56(3) and D.N.M.L.R.-Civ. 56.1(b).  Therefore the Court finds that this fact is undisputed

constitutional rights allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.

Plaintiff asserted Fourth Amendment and Fourteenth Amendment claim against Defendants alleging they "fabricate[d] probable cause evidence" which was used to obtain the February 12, 2003 search warrant. *See* Second Am. Cmpl., ¶¶ 10, 111 . The Court reads this statement to allege that the February 12, 2003 Search Warrant Affidavit and subsequent search violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. *Albright v. Oliver*, 510 U.S. 266, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994) (holding searches and initial seizure are governed by the Fourth Amendment); *Taylor v. Meacham*, 82 F.3d 1556, 1560-61 (10th Cir. 1996).[5]

## Discussion

### I.  The Law of Absolute Immunity

Although § 1983 does not contain any language which suggests a defense of official immunity, the Supreme Court long ago decided that Congress could not have intended to abrogate immunities "well grounded in history and reason." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Accordingly, § 1983 is limited by two recognized exceptions:  absolute immunity and qualified immunity. Defendant Spiers argues that he is entitled to the former with respect to

---

[5]  The Fourteenth Amendment is the incorrect standard to apply to this claim because searches and initial seizure are governed by the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266 (1994); *Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996); *Gehl Group v. Koby*, 63 F.3d 1528 (10th Cir. 1995) (stating that substantive due process claim should not substitute more specific civil rights or malicious prosecution claims). Therefore, Plaintiff's Fourteenth Amendment claim based on the February 12, 2003 search warrant is dismissed.

5

Plaintiff's Fourth Amendment and related civil conspiracy claims based on the February 21, 2003

Search Warrant Affidavit.[6]

 The presumption is that qualified rather than absolute immunity is sufficient to protect

government officials in the exercise of their duties, and, accordingly, absolute immunity is

recognized only sparingly.  *Burns v. Reed*, 500 U.S. 478, 486 (1991).  While "acts undertaken by

a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in

---

 [6]  This Court has previously issued a "Memorandum Opinion on Defendant Spiers' Motion
to Dismiss, Immunity", dated February 7, 2006 (Doc. No. 42) ("Immunity Opinion").  In that
Opinion, which was based on Plaintiff's First Amended Complaint, the Court held that Defendant
Spiers was entitled to absolute immunity for "the professional evaluation of the evidence
assembled by the police and appropriate preparation for its presentation at trial or before a grand
jury after a decision to seek an indictment has been made."  *Buckley v. Fitzsimmons*, 509 U.S.
259, 273 (1993).  After reviewing Plaintiff's Second Amended Complaint and the parties'
subsequent briefing, the Court reiterates this conclusion and holds that Defendant Spiers is
absolutely immune from liability with respect to Plaintiff's Fourteenth Amendment and related
civil conspiracy claims based on February 21-23, 2001 and May 21-23, 2002 grand jury
presentments.
 The Immunity Opinion reserved judgment on the question of whether Defendant Spiers is
entitled to absolute immunity with respect to Plaintiff's Fourth Amendment and related civil
conspiracy claims based on the February 21, 2001 arrest warrant.  The Court need not address
this issue since, as explained in Memorandum Opinion addressing City Defendants' July 28, 2006
Motion for Partial Summary Judgment No. II and Defendant Spiers' Motion for Partial Summary
Judgment I issued concurrently with this one, Plaintiff's Fourth Amendment and related civil
conspiracy claims based on the arrest warrant are barred by the statute of limitations.  *See*
*Wallace v. Kato*, 2007 U.S. Lexis 2650 (2007).
 In the Immunity Opinion, the Court also reserved judgment on the question of whether
Defendant Spiers was entitled to immunity for any alleged press contact.  The Court need not
address this immunity issue since the Second Amended Complaint does not contain a defamation
cause of action.
 Finally, the Immunity Opinion reserved judgment on the question of whether Defendant
Spiers was entitled to immunity in connection with the December 13, 2000 and February 12, 2003
search warrant affidavits.  The Court need only address the immunity question with respect to the
latter search warrant affidavit since, as explained in  the Memorandum Opinion addressing City
Defendants' July 28, 2006 Motion for Partial Summary Judgment No. II and Defendant Spiers'
Motion for Partial Summary Judgment I issued concurrently with this one, Plaintiff's Fourth
Amendment and related civil conspiracy claims based on the December 13, 2000 search warrant
affidavit are barred by the statute of limitations.

the course of his role as an advocate for the State, are entitled to the protections of absolute

immunity," a prosecutor's administrative and investigative functions are only entitled to qualified

immunity. *Buckley*, 509 U.S. at 273. Courts use a "functional approach" to determine whether

(and what type of) immunity is available to protect an official from liability for the particular

activities alleged to have violated a plaintiff's rights. *Burns*, 500 U.S. at 269. Thus, a court looks

to the "nature of the function performed, not the identity of the actor who performed it."

*Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988). Again, the vital

difference between activities protected by absolute immunity and those protected by qualified

immunity is that the former must be "closely associated with the judicial process." *Burns*, 500

U.S. at 495. Finally, the official seeking the immunity bears the burden of showing that his action

are entitled to such absolute protection. *Burns*, 500 U.S. at 486.

> **A.      Defendant Spiers is not entitled to absolute immunity for the act of
> providing legal advice to Defendant Fox about the February 12, 2003 search
> warrant affidavit**

In this case, it is undisputed that Defendant Spiers reviewed and approved the February

21, 2003 Search Warrant Affidavit before Defendant Fox presented it to a magistrate. Indeed, a

handwritten notation on the last page of the affidavit states, "Approved via telephone by Assistant

District Attorney Paul Spiers on February 12, 2003 at approximately 1430 hours." Further,

Defendant Spiers himself explains that his role with respect to this warrant "was to review [it] for

legal sufficiency, and to approve [it] in [his] role as prosecutor. [His] approval was not necessary,

but was sought as a professional courtesy." Def. Spiers' Mot. S.J. II, Ex. 1, ¶ 6. The Court

therefore finds that Defendant Spiers was giving legal advice to Defendant Fox during the

investigative phase of the criminal case against Plaintiff.

7

Importantly, in *Burns*, the Supreme Court held, "[A]dvising the police in the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute immunity." *Burns*, 500 U.S. at 493 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430). Moreover, in Justice Scalia's partial concurrence, he addressed the additional issue of whether absolute prosecutorial immunity extends to the prosecutor's approval of a search warrant application and concluded that absolute immunity does not attach to such approval. *See Burns*, 500 U.S. at 502-04 (Scalia, J., concurring in the judgment in part and dissenting in part). As the Supreme Court has noted, "[I]t [would be] incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice . . . Ironically, it would mean that the police, who do not ordinarily hold law degrees, would be required to know the clearly established law, but prosecutors would not." *Id*. at 496. Thus, Defendant Spiers' act of advising Defendant Fox about the search warrant affidavit is not protected by absolutely immunity.[7] Therefore, Defendant Spiers is not absolutely immune from liability with respect to Plaintiff's Fourth Amendment and related civil conspiracy claims based on the February 12, 2003 search warrant. Instead, his actions, along with those of Defendants Fox and Arbogast will be measured against the qualified immunity standard.

---

[7] In reaching this conclusion, the Court has considered Defendant Spiers' argument that he is entitled to absolute immunity simply because probable cause (in the form of an indictment) had been established against Plaintiff prior to February 21, 2003 - the date he provided legal advice to Defendant Fox about the Search Warrant Affidavit. This argument, however, is foreclosed by the *Buckley* Court's conclusion that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination . . . a prosecutor may engage in [work] that is entitled to only qualified immunity." *Buckley*, 509 U.S. at 273 n.5. Thus, the immunity determination turns on the functional test set forth above, not a temporal one.

**II.    The Law of Qualified Immunity**

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)).  Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986).  Further, when a determination of qualified immunity turns on a question of probable cause, "'Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Assessing qualified immunity involves a two-part sequential analysis.  Specifically, when a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to establish: (1) "that the defendant's actions violated a constitutional or statutory right" and (2) "if the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations and internal quotations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001) (setting forth qualified immunity standards).  If the plaintiff fails to establish the violation of a constitutional or statutory right, there is no necessity for further inquiries concerning qualified immunity.  *Saucier*, 533 U.S. at 201.  Deciding the constitutional question before addressing the qualified immunity question promotes clarity in the legal standards for official conduct, to the benefit of both the officers and

the general public.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840-42, n.5 (1998).

If a constitutional violation could be made out on a favorable view of the parties' submissions, the next inquiry is whether the right was clearly established at the time it occurred. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  The yardstick in determining whether the right was "clearly established" asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Medina*, 252 F.3d at 1128 (quoting *Wilson*, 526 U.S. at 615) (internal quotations omitted)). The second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

**A.      Relevant Fourth Amendment law**

The Fourth Amendment assures citizens the privacy and security of their homes unless a "neutral and detached" judicial officer determines that there is probable cause to issue a warrant. *United States v. Ramirez*, 63 F.3d 937, 941 (10th Cir. 1995).  Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched," *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1330 (10th Cir. 2003), based upon a "practical, commonsense analysis of the totality of the circumstances." *United States v. Richardson*, 86 F.3d 1537, 1545 (10th Cir.) (citation omitted), *cert. denied*, 519 U.S. 1030 (1996).

10

In a case, such as this one, where the plaintiff claims that the issuance of a warrant was the product of officers' misleading presentation of relevant facts, "the constitutional inquiry . . . focuses on the materiality of the misconduct in relation to the determination of probable cause." *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006).  Specifically:

> If an . . . affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.  Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to the probable cause for the warrant.

*Taylor v. Meacham*, 82 F.3d 1556, 1560-61 (10th Cir. 1996); *cert. denied*, 519 U.S. 871 (1996); *see also Franks v. Delaware*, 438 U.S. 154, 155-156 (1978); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004); *cert. denied*, 543 U.S. 915 (2004).  If hypothetically correcting the misrepresentation or omission would not alter the determination of whether probable cause exists, the misconduct is not of constitutional significance and is not actionable under § 1983.  *Grubbs*, 445 F.3d at 1278.

### 1.    The Search Warrant Affidavit sets forth probable cause

In determining whether the Search Warrant Affidavit establishes probable cause to search Plaintiff's residence for the tapes of sessions with his psychic, the Court has excluded the allegedly false inculpatory information and considered the allegedly exculpatory information as though it were included.  Specifically, the Court has set aside the statements included in the Search Warrant Affidavit that Plaintiff identifies as false in paragraphs 22,[8] 26, 38, 42, 50, 57, and 66 of the

_____

[8]  The Court has also excluded the phrase "that was apparently consistent with the pink dyed hair located in Diazien's shampoo/carpet-cleaner" on page twelve of the Search Warrant

Second Amended Complaint.  Additionally, the Court has considered the following allegedly

exculpatory facts included in Plaintiff's Second Amended Complaint:  A DNA report excluded

Plaintiff as the contributor of hair samples on the tarp found near Magdalena; there were foreign

blood profiles located in Linda's car and Girly's apartment (enough to soak through the carpet);

and Doyle Monk, Diazien's cell-mate, told investigators that Diazien told him that Plaintiff had

nothing to do with Girly Hossencofft's murder.[9]  Second Am. Cmpl., ¶¶ 74, 75, 49.

The Search Warrant Affidavit recites that Diazien gave Defendant Fox and another

detective statements in February and March 2002 that Plaintiff was to follow Girly home to

discover where she lived so she could be murdered.  With regard to Plaintiff's assignment, Diazien

told Fox:

> In the course of how this thing - how the crime was committed, it
> was his [Plaintiff's] job to do that.  I didn't have to ask him.  He
> knew it.
>
> "[H]e [Plaintiff] attempted, I don't know, three times.  Two times
> he lost her.
>
> "[H]e said he followed her from the - the bank, down Menaul to, I
> guess that's Carlisle, and then over to Carlisle to that Wal-Mart
> that's on that - Carlisle."
>
> Now we've got a problem because I'm thinking, when [Plaintiff]
> tells me this, there is no record of [Plaintiff] following her.  No
> record at all.  But the fact that he turns around and says, 'You
> know what, I followed her into the Wal-Mart and she purchased

---

Affidavit as well as statements concerning the trace evidence collected from the steam cleaner
included on page thirteen of the Search Warrant Affidavit since these statements are closely
related to the false statement identified in paragraph twenty-two of the Complaint.  *Compare* Def.
Spiers' Mot. S.J. II, Ex. 5, pgs. 12, 14, ¶ 4 *with* Second Am. Cmpl., 22.

[9]  The Court may consider hearsay in considering whether probable cause exists.  *United
States v. 1948 South Martin Luther King Dr.*, 270 F.3d 1102, 1112-13 (7th Cir. 2001).

> such and such items,' and there's record now of her buying stuff at
> Wal-Mart.  If that is, in fact, true, and it did happen, how hard is it
> to look through her records that she wrote a check to Wal-Mart on
> such and such a day.  There it is."

*See* Def. Spiers' Mot. S.J. II, Ex. 5, pg.14.  Additionally, the Search Warrant Affidavit included a

statement that, after the second session was completed, Plaintiff's attorney's private investigator

contacted Hess and told her, "We found the crime scene and we know the crime scene and we

know where the body's buried, but we're not going to say anything [']til three years from now."

*See* Def. Spiers' Mot. S.J. II, Ex. 5, pg.14.

With respect to Plaintiff's sessions with Hess, there is no challenge to the following

information for purposes of determining probable cause.  The Search Warrant Affidavit states that

on January 30, 2003, Hess made a statement to Defendant Fox, in which she said she was a

psychic and had conducted two sessions with Plaintiff.  *See* Def. Spiers' Mot. S.J. II, Ex. 5,

pg.14.  Hess tape-recorded her sessions with Plaintiff (as well as her other clients) but did not

keep the tapes herself.  *Id*. at 15.  Instead, she gave the tapes to Plaintiff and last observed them in

his possession.  *Id*.  The Search Warrant Affidavit further states that the first session occurred

before Plaintiff was arrested and concerned only general matters.  *Id*.  The second session

occurred after Plaintiff was arrested, and during this session, Plaintiff explained to Hess why he

had tried to eat the business cards immediately after he was arrested.[10]  *Id*. at 14.  It is also

undisputed that, according to the Search Warrant Affidavit, Plaintiff spoke to Hess about Diazien

during the second session.  *Id*. at 14-15; Pl's Resp. to City Defs.' Mot. S.J. III, Ex. 40, pg. 42 ll.

---

[10]  The Search Warrant Affidavit only makes a vague reference to the "cards".  *See* Def.
Spiers' Mot. S.J. II, Ex. 5, pg.14.  However, it is undisputed that the "cards" refer to the business
cards Plaintiff attempted to ingest on February 12, 2001, immediately after he was arrested and
placed into police custody.  *See* City Defs.' Mot. S.J. III, Ex. A, ¶¶ 9-10.

17-21 (Doc. No. 127).  Hess also advised Defendant Fox that Plaintiff told her he was "in a little bit of trouble," and that he thought he was being set up or framed.  *Id*. at 14-15.[11]  This is adequate to conclude that even without the challenged evidence, there is probable cause to examine the tapes for evidence of Plaintiff's participation in the murder of Girly.  *Cf. United States v. Castellano*, 610 F. Supp. 1359, 1437-38 (S.D.N.Y. 1985) (stating that a search warrant is proper where there is probable cause to believe cassette tapes contain evidence of a crime).

Therefore, Plaintiff's allegation that Defendants "fabricate[d] probable cause evidence" in order to obtain the February 12, 2003 search warrant is not of constitutional significance and is not actionable under § 1983.[12]  *See Grubbs*, 445 F.3d at 1278.  Thus, since Plaintiff failed to establish the violation of a constitutional or statutory right, Defendants are entitled to qualified

---

[11]  Plaintiff relies on Plaintiff's Exhibit 40 to support his contention that "Hess specifically states [to Plaintiff's criminal defense attorney] that [Plaintiff] never talked about the case [during the psychic sessions]."  Pl's Resp. to City Defs.' Mot. S.J. III, pgs. 12-13, ¶ 2.  However, this does not accurately represent Hess' full testimony as set forth in Plaintiff's Exhibit 40.  When asked if Plaintiff told her anything about the case resulting from Girly's murder, Hess responded, "Not the case; [Plaintiff told me about] conversations he may have had with [Diazien]."  Pl's Resp. to City Defs.' Mot. S.J. III, Ex. 40, pg. 15, ll. 8-11.  This is consistent with Hess' later testimony that, after Plaintiff was arrested, "[Plaintiff] told [her] things about Diazien."  *Id*. at 42, ll. 17-23.  The only other statement in the transcript that could potentially support the contention that Plaintiff did not discuss Girly's case with Hess is Hess' remark that Plaintiff did not indicate to her "that he knew where [Girly's] body was . . ."  *Id*. at 34, ll. 16-20.  Hess made this assertion when asked about the call she received from Plaintiff's private investigator indicating he knew where Girly's body was located.  *Id*. at 34, ll. 3-23.  However, this is consistent with the information set forth in the Search Warrant Affidavit.  Specifically, the Search Warrant Affidavit includes information about the private investigators's call to Hess and his statement that he knew where Girly's body was located.  *See* Def. Spiers' Mot. S.J. II, Ex. 5, pg.15.  The Search Warrant Affidavit does not indicate the Plaintiff himself told Hess he knew where Girly's body was located.  *Id*.

[12]  Moreover, the Court need not consider Plaintiff's related civil conspiracy claim since an element of such a claim requires the actual deprivation of a right secured by the constitution and laws.  *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990); *see also Snell v. Tunnell*, 920 F.2d 673, 701-701 (10th Cir. 1990), *cert. denied*, 499 U.S. 976 (1991).

immunity with respect to this claim and there is no necessity for further inquiries concerning

qualified immunity.  *See Saucier*, 533 U.S. at 201.

### Conclusion

Based on the foregoing, City Defendants' motion for partial summary judgment should be

GRANTED, and Defendant Spiers' motion for partial summary judgment should be GRANTED

in part and DENIED in part.

DATED April 13, 2007.


_____
UNITED STATES DISTRICT JUDGE
BRUCE D. BLACK

**Attorneys:**

**For Plaintiffs**
Alex Chisholm

**For Defendant**
Luis Robles