IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
———

**WILLIAM MILLER**,

        Plaintiff,

v.                                                     No. CIV 05-0577 BB/LAM

**PAUL SPIERS, MICHAEL FOX, and
DONNA ARBOGAST**,

        Defendants.

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants Fox and Arbogast's (collectively "City Defendants") August 3, 2006 motion for partial summary judgment (Doc. No. 110) ("City Defendants' Motion for Partial Summary Judgment No. IV"). Having reviewed the submissions of the parties and the relevant law, the Court finds that City Defendants' motion should be GRANTED.

### **Standard for Reviewing a Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is

"not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. Further, "[A] jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

**Undisputed Facts**

On or about September 9, 1999, an Albuquerque woman named Girly Hossencofft ("Girly") was murdered. Although Girly's remains have never been located, Girly's husband, Diazien Hossencofft ("Diazien"), and his girlfriend, Linda Henning ("Linda"), were convicted for her murder. *See* City Defs.' Mot. S.J. III, Ex. A, ¶ 6 (Doc. No. 109). As early as September 1999, Defendant Paul Spiers ("Spiers"), an Assistant District Attorney for the County of Bernalillo, targeted Plaintiff Bill Miller ("Plaintiff") as a third suspect in Girly's murder. *See* First Am. Cmpl., ¶ 8. Defendant Michael Fox ("Fox"), an Albuquerque Police Department ("APD") Detective, was the case agent for the investigation into Girly's murder and Defendant Donna Arbogast ("Arbogast") was employed by the APD as a forensic scientist who collected, analyzed, and tested trace evidence in the investigation. *See* City Defs.' Mot. S.J. IV, Ex. A, ¶ 4.

2

Between May 21-23, 2002, the State of New Mexico presented evidence against Plaintiff to the Third Grand Jury.[1] Both Defendants Fox and Arbogast testified. It is undisputed that, during this grand jury testimony, Defendant Fox testified falsely only about the circumstances surrounding Plaintiff's purchase of a handgun. *See* Second Am. Cmpl., ¶ 55. Specifically, Plaintiff Miller explained during his grand jury testimony that he bought the handgun "from this gentleman [Mark Lucero], outside the Quarter Master [sic] gun, gun shop." *See* Second. Am. Cmpl., ¶ 53. However, when Defendant Fox was asked, during his testimony, if Plaintiff previously stated that he bought the gun from the Quartermaster gun store (as opposed to outside the Quartermaster gun store), Defendant Fox answered, "Quartermaster, that's correct. He buys it from Quartermaster, but through investigation, it's discovered that he bought it from an individual." Second Am. Cmpl., ¶ 55. Aside from this discrepancy, Plaintiff does not allege that Defendant Fox provided any other false or inaccurate testimony to the Third Grand Jury. *See* Second Am. Cmpl., ¶¶ 1-118.

Girly's body has never been recovered and therefore it has been impossible to determine the cause of her death and whether the gun Plaintiff purchased was used in connection with her murder. Further, Defendants have never stated or inferred that Plaintiff used the handgun in connection with Girly's murder. To the contrary, Defendant Fox's affidavit in support of the February 13, 2003 search warrant states that Plaintiff testified to the grand jury that he sold the handgun to Diazien in August 1999 - approximately one month before Girly disappeared. Def.

---

[1] The Court will not detail the extensive factual history leading up to the May 2002 grand jury proceeding. Instead, familiarity with these facts is assumed. The Court directs readers not familiar with this background to the Memorandum Opinion resolving City Defendants' July 28, 2006 Motion for Partial Summary Judgment No. II and Defendant Spiers' Motion for Partial Summary Judgment I issued concurrently with this Memorandum Opinion.

Spiers' Mot. S.J. II, Ex. 5, pg. 9.  This statement is consistent with the fact that, on September 22, 1999, the handgun was recovered by APD detectives from a house Diazien and Linda were renting in South Carolina.  *Id*. at pg. 6.

Plaintiff does not allege that Defendant Arbogast testified falsely or otherwise violated his constitutional rights during her grand jury testimony on this occasion.  *See* Second Am. Cmpl., ¶¶ 1-118.

On May 24, 2002, the Third Grand Jury returned an indictment charging Plaintiff with five counts of tampering with evidence but not for kidnapping, conspiracy, or murder.  *See* Second Am. Cmpl., ¶ 92.  On July 13, 2003, Plaintiff entered into a Plea and Disposition Agreement with the State of New Mexico, based on the charges returned by the Third Grand Jury, in which Plaintiff pled no contest to three counts of attempted tampering with evidence.  *See* City Defs.' Mot. S.J. II, Ex. E.  The two remaining tampering with evidence charges were dismissed with prejudice "[i]n consideration of [Plaintiff's] plea of No Contest to," the three charges of attempted tampering with evidence.  *Id*.  On October 8, 2003, a Judgment, Sentence, and Order Suspending Sentence was entered against Plaintiff.  According to this Judgment, Plaintiff was "convicted" of three counts of Attempted Tampering with Evidence pursuant to his no contest plea (the "Attempted Tampering Convictions").  *See* City Defs.' Mot. S.J. II, Ex. F.  Plaintiff then received a suspended sentence.

### Plaintiff's Claim

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983 (2007).  Section 1983 "is not itself a source of substantive rights," but merely

provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived the plaintiff of a right secured by the Constitution and the laws of the United States, and (2) the defendant acted under the color of state law. *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991).

The first step in a § 1983 claim is to identify the specific constitutional rights allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140. Plaintiff alleges that Defendant Fox testified falsely to the Third Grand Jury, thereby violating his Fourteenth Amendment rights since a criminal defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction, *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), or withholds exculpatory evidence from the defense. *Brady v. Maryland*, 373 U.S. 83 (1963).

As noted above, Plaintiff does not allege that Defendant Arbogast testified falsely or otherwise violated his constitutional rights during her testimony to the Third Grand Jury. *See* Second Am. Cmpl., ¶¶ 1-118. Therefore, Plaintiff cannot assert a Fourteenth Amendment claim against Defendant Arbogast based on her testimony to the Third Grand Jury.[2]

---

[2] As explained in the Memorandum Opinion resolving City Defendants' July 28, 2006 Motion for Partial Summary Judgment No. II and Defendant Spiers' Motion for Partial Summary Judgment I issued concurrently with this Memorandum Opinion, the Plaintiff's Second Amended Complaint does not state a malicious abuse of process claim. Therefore, the Court need not address the malicious prosecution arguments raised in the parties' briefs regarding the instant Motion for Partial Summary Judgment No. IV.

**I.      Plaintiff's Allegation Regarding Defendant Fox's Testimony Does Not Support a Viable Fourteenth Amendment Claim**

    **A.      Plaintiff did not suffer a constitutional deprivation due to Defendant Fox's testimony to the Third Grand Jury**

The Due Process Clause of the Fourteenth Amendment protects "life, liberty, or property" against deprivation without due process of law.  U.S. CONST. AMEND. XIV, § 1.  In this case, it is difficult to see how Defendant Fox's testimony to the Third Grand Jury deprived Plaintiff of any of these constitutionally protected interests.  The Third Grand Jury declined to return charges against Plaintiff for murder, kidnapping, or conspiracy - the only charges conceivably related to Defendant Fox's testimony regarding the circumstances of Plaintiff's handgun purchase.  Additionally, Plaintiff was not detained subsequent to Defendant Fox's testimony to the Third Grand Jury.  Finally, to the extent Plaintiff contends Defendant Fox's testimony portrayed him (Plaintiff) as untruthful, it is important to keep in mind that injury to reputation, without more, is not a liberty interest protected by the Fourteenth Amendment.  *Paul v. Davis*, 424 U.S. 693, 709-10 (1976).  To constitute a liberty interest, damage to reputation must be accompanied by deprivation of a "more tangible interest" such as continued state employment or other "right of status previously conferred by state law."  *Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997).  Plaintiff does not claim that any such tangible deprivation occurred as a result of Defendant Fox's false testimony.  Thus, the Court is not persuaded that Defendant Fox's testimony to the Third Grand Jury deprived Plaintiff of an interest protected by the Due Process Clause of the Fourteenth Amendment.

> **B.     Defendant Fox's testimony about Plaintiff's statement concerning whether he purchased the gun inside or outside the gun store is not material**

Moreover, assuming, *arguendo*, that Plaintiff had alleged the deprivation of such a constitutionally protected interest, he still would not have a viable Fourteenth Amendment claim based on Defendant Fox's testimony regarding the circumstances surrounding the purchase of the handgun.  The Supreme Court has held that a Fourteenth Amendment claim based on false testimony is only actionable if the testimony is material.  *Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that a finding of materiality of the evidence is required under *Brady*).  In this regard, it explained, "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'"  *Id.* (citing *Napue v. Illinois*, 360 U.S. 264, 272 (1959).  Thus, to prove a Fourteenth Amendment due process violation, Plaintiff must establish three elements:  "(1) that there was false testimony, (2) that the government knew the testimony was false, [and] (3) that the testimony was *material*."  *United States v. Gonzalez*, 436 F.3d 560, 580 (5th Cir. 2003) (emphasis added).

To review, Defendant Fox's testimony about the purchase of the handgun was false because he testified that Plaintiff stated that he bought the handgun in the Quartermaster gun store when, in fact, Plaintiff's statement was that he purchased the gun from an individual - Mark Lucero - outside the Quartermaster gun store.  If this were a case in which there was proof, or even an allegation, that Plaintiff used the gun at issue in connection with Girly's murder, Defendant Fox's testimony about the details of its purchase might possibly be material to a grand jury's decision to return charges of murder, kidnapping, and/or conspiracy against Plaintiff.  But, even in that situation, the Court is not convinced that testimony about Plaintiff's statement

concerning whether the gun was purchased inside or outside the Quartermaster gun store would be material to such a determination.  However, as stated above, in the present case, Girly's body has never been recovered and so it is impossible to know what caused her death, much less whether the handgun Plaintiff purchased was the murder weapon.

In conclusion, Plaintiff has not stated a viable Fourteenth Amendment claim based on Defendant Fox's testimony to the Third Grand Jury for two independent reasons:  1) Plaintiff was not deprived of "life, liberty, or property" as a result of this testimony and 2) even if such a constitutional deprivation had hypothetically occurred, Defendant Fox's false testimony would not have been material to such a determination.  Since Plaintiff has not stated a viable Fourteenth Amendment claim, the Court need not consider Defendant Fox's argument that his testimony is entitled to absolute immunity.

## Conclusion

Based on the foregoing, City Defendants' motion for partial summary judgment should be GRANTED.

DATED April 13, 2007.

*(signed)*
UNITED STATES DISTRICT JUDGE
BRUCE D. BLACK

**Attorneys:**

**For Plaintiffs**
Alex Chisholm

**For Defendant**
Luis Robles